**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2656-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.B.,

      Defendant-Appellant,

and

E.O.R.F.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.R.,
a minor.

_____

Submitted February 14, 2022 – Decided February 25, 2022

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0111-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Dianne Glenn, Designated Counsel, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollack, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant M.B.[1] appeals from a May 6, 2021 judgment of guardianship after a trial terminating parental rights to her son, A.R (Adam), born December 18, 2016.[2] On appeal, defendant challenges the trial judge's determination that respondent New Jersey Division of Child Protection and Permanency (Division) satisfied the third and fourth prongs of the bests interests of the child test,

---

[1] We use initials and pseudonyms to protect the family's identity. R. 1:38-3(d)(12).

[2] In a January 30, 2020 order, the judge dismissed defendant E.O.R.F from the litigation based on genetic test results establishing he is not Adam's biological father.

N.J.S.A. 30:4C-15.1(a).  We affirm for the comprehensive reasons stated in the May 6, 2021 written decision of Judge Bernadette N. DeCastro.

The evidence adduced during the trial is detailed in Judge DeCastro's decision.  We briefly summarize the facts.

At birth, Adam tested positive for opioids and experienced withdrawal symptoms.  As a result, the hospital contacted the Division, and the Division began an investigation.  During the investigation, defendant told the Division's case worker she used sixteen to eighteen bags of heroin daily while pregnant with Adam.  The Division executed an emergency removal of Adam upon his discharge from the hospital and placed him in a nonrelative resource home.

Over the next two and a half years, defendant failed to complete multiple outpatient and inpatient substance abuse programs and separate parenting programs to which she was referred by the Division.[3]  Nor did she attend many of the evaluations scheduled by the Division.[4]  Also, she failed to visit Adam

_____

[3] From July 2017 to June 2018, defendant regained custody of Adam.  However, defendant relapsed in 2018.  In August 2018, the Division again obtained custody of Adam and placed him with the same nonrelative resource parent.

[4] Defendant attended a psychological evaluation with Dr. Samiris Sostre in November 2019 but failed to attend subsequently scheduled appointments for an updated evaluation.  Defendant completed a bonding evaluation with Dr. Antonio Burr in February 2020 but failed to attend subsequent appointments for

regularly at his resource home despite the resource parent's efforts to facilitate visits and communication between mother and son throughout the COVID-19 pandemic. Additionally, defendant did not remain in touch with the Division. While defendant identified her mother, R.A. (Rose), as a possible relative placement, Rose failed to maintain contact with the Division throughout the litigation. Rose also declined to provide certain information necessary for the Division to evaluate her ability to care for Adam.

Judge DeCastro conducted a guardianship trial over two non-consecutive dates in April 2021. At trial, the judge heard testimony from the Division's witness, the Division's expert, and defendant.

The Division case worker testified defendant admitted using heroin through the time of trial. The case worker also recounted the excuses defendant provided regarding missed appointments, non-completion of treatment programs, and failure to attend scheduled visits with her son.

The resource parent also testified. She sought to adopt Adam and explained she understood the difference between kinship legal guardianship and adoption. The resource parent indicated her willingness to allow defendant to

---

an updated evaluation prior to trial. She also completed part of a psychological evaluation with Dr. Burr in 2020 but left midway through the meeting.

A-2656-20

have contact with Adam if appropriate to do so given defendant's substance abuse issues.

The Division's expert, Dr. Burr testified. Judge DeCastro found his testimony to be "uncontroverted and credible." The doctor was able to complete a bonding evaluation with defendant. While the doctor attempted to conduct a psychological evaluation, defendant became upset at some of the questions and never returned to complete that evaluation despite the Division scheduling several return appointments.

While defendant told Dr. Burr that she wanted to regain custody of Adam, the doctor noted she continued to use drugs and failed to attend treatment programs for her substance abuse issues. The doctor opined defendant "did not display a rehabilitation attitude" and "made no effort to remediate her drug addiction." To demonstrate "sustained remission," Dr. Burr explained defendant "would need to have one year living independently after completing drug treatment without using any drugs." Even if she succeeded and remained drug free, the doctor would consider defendant to have achieved "only partial remission." According to Dr. Burr, "[p]arenting a young child while actively using opiates with no treatment is a significant problem and there are all sorts of risks to the child."

5

In reviewing the findings based on his bonding evaluation between the resource parent and Adam and defendant and Adam, Dr. Burr found no bond between mother and son. According to Dr. Burr, "the resource mother was [Adam]'s psychological parent and there was a secure attachment and bond." Thus, Dr. Burr explained "removing [Adam] from his current resource parent with whom he is securely bonded would cause him significant harm. It would distress him and he could regress in several areas." On the other hand, Dr. Burr testified defendant "would not be able to mitigate the harm as she is still using heroin."

After reviewing the evidence and hearing the testimony, Judge DeCastro concluded the Division "ha[d] proven by clear and convincing evidence that it is in the child's best interest to terminate the parental rights of defendant[] due to [her] lack of progress towards reunification and the unavailability of an unknown biological father." The judge considered the evidence regarding the Division's satisfaction of the four prongs under the best interests test. However, on appeal, defendant challenges only the judge's findings under the third and fourth prongs. The third prong addresses the reasonableness of the Division's efforts to provide services to the parent prior to termination as well as exploration of alternatives to termination of parental rights. The fourth prong

6

addresses whether termination of the parent's rights will do more harm than good to the child. Thus, we limit our review to the judge's findings on those two prongs.

Regarding the Division's efforts to provide services to defendant under the third prong, in her written decision, the judge detailed the Division's copious efforts to work with defendant beginning in 2017. The judge concluded "[t]he Division provided a comprehensive number of reasonable efforts in this case spanning a period of four years."

Additionally, the judge concluded there were no alternatives to termination under the third prong. She found "[t]he Division explored relatives and friends, but all were ruled out." While defendant's mother, Rose never received a "rule out" letter, the judge determined Rose was not a viable resource for the child because Rose "did not respond to the Division's requests early on to do a background check on her adult son who resides with her" and never sought to visit Adam until just before the trial. Judge DeCastro also noted Dr. Burr's opinion that a change in placement for Adam after three years of residing with his resource parent was not in Adam's best interest.

Regarding the fourth prong, Judge DeCastro found termination of defendant's parental rights would not do more harm than good. According to

A-2656-20

the Division's expert, defendant's addiction to heroin and refusal to complete treatment programs left Adam at risk of harm. Additionally, the judge relied on Dr. Burr's testimony that Adam had an attachment to his resource parent and lacked any attachment to defendant. The judge accepted the doctor's opinion that "[Adam] would suffer serious and enduring harm if he was removed from the stable environment of [his] resource parent" and "the resource parent can mitigate any harm the child may face if the parental rights of [defendant] are terminated." The judge also noted defendant "did not submit any evidence that contradict[ed] Dr. Burr's observations and conclusions."

Having reviewed the record, we affirm for the reasons stated in Judge DeCastro's thorough and well-reasoned written decision. We add only the following brief comments.

Services provided by the Division to meet a child's need for permanency and a parent's right to reunification must be "coordinated" and have a "realistic potential" to succeed. N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 267 n.10 (App. Div. 2002). "Whether particular services are necessary in order to comply with the diligent efforts requirement must therefore be decided with reference to the circumstances of the individual case before the court, including the parent's active participation in the reunification effort." In

re Guardianship of D.M.H., 161 N.J. 365, 390 (1999).  The reasonableness of the Division's efforts regarding the provision of services to a parent is not measured by the success of the services.  Id. at 393.

Here, on multiple occasions, defendant refused to attend the various services and programs offered by the Division.  The Division is not required to offer programs and services chosen by defendant.  Rather, the Division must offer programs and services best suited to address defendant's needs.  In this case, the Division recognized defendant needed an inpatient treatment program to address her drug addiction.  Despite the Division's repeated efforts and continued encouragement, defendant declined to successfully complete the programs and services the agency offered.

We also reject defendant's argument the judge erred in finding no alternative to termination of her parental rights because the Division failed to evaluate placement of Adam with defendant's mother.

When the Division removes a child from his or her parent, the Division is required to assess the child's extended biological family members for possible placement.  N.J.S.A. 30:4C-12.1(a).  The search for a relative placement is complete when the possible relative either responds or fails to respond to the

Division within forty-five days.  Ibid.  The Division then evaluates the interested relative's ability to provide care and support for the child.  Ibid.

Here, the Division was unable to evaluate Rose as a relative placement for Adam.  Rose failed to respond to the Division's inquiries regarding her ability to care for the child.  She also declined to provide information about an adult son who lived with her.  Further, Rose wavered on her commitment to care for Adam throughout the litigation.  Additionally, Rose never visited Adam while he was living with his resource parent.  Because Rose did not demonstrate a compelling interest in caring for Adam, the Division properly determined Rose's behavior, as well as her failure to maintain contact with the Division, formed the basis for its decision against placing Adam in her care.

Under the fourth prong of the best interests test, the Division established termination would not do more harm than good.  In re Guardianship of K.H.O., 161 N.J. 337, 354-55 (1999).  When termination of parental rights is based on parental unfitness rather than bonding, as in this case, the proper inquiry under the fourth prong is the child's need for permanency and the parent's inability to care for the child in the foreseeable future.  N.J. Div. of Youth & Family Servs. v. B.G.S., 291 N.J.  Super. 582, 593 (App. Div. 1996).  Children have their own

10

right to a permanent, safe, and stable placement. N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004).

While termination of parental rights may cause some harm to Adam, based on the Division's unrebutted expert testimony, Judge DeCastro correctly concluded Adam would suffer serious and enduring harm if removed from his resource parent. Adam had lived with his resource parent for three and a half years. As Adam's psychological parent, the resource parent could mitigate any harm from termination of defendant's parental rights. Additionally, there was no evidence that defendant could safely parent Adam in the foreseeable future given her untreated drug addiction. Despite the COVID-19 pandemic, defendant had ample opportunities to take advantage of the programs and services offered by the Division and to complete the required court-ordered evaluations to avoid termination of her parental rights.

After reviewing the trial record, we find no factual or legal error in the judge's determinations on the third and fourth prongs of the best interests test. We are satisfied that Judge DeCastro's decision is overwhelmingly supported by substantial credible evidence in the record. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2656-20